**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- :
RYAN O'DELL,                                              :
                                                         :
               Plaintiff,                   :   Civil Action No. 22-cv-9212
                                                         :
v.                                                       :   **COMPLAINT FOR VIOLATIONS OF**
                                                         :   **SECTIONS 14(a) AND 20(a) OF THE**
BTRS HOLDINGS INC., FLINT A. LANE,                       :   **SECURITIES EXCHANGE ACT OF**
BOB FARRELL, MATT HARRIS, CLARE                          :   **1934**
HART, LAWRENCE R. IRVING, JOHN                           :
MURRAY, and JULI SPOTTISWOOD,                            :   **JURY TRIAL DEMANDED**
                                                         :
               Defendants.                  :
-------------------------------------------------------- :
                                                         :
                                                         :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against BTRS Holdings Inc. ("Billtrust or the "Company") and the members Billtrust's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Billtrust by affiliates of EQT X Fund and EQT X AB ("EQT").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 21, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Bullseye Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Bullseye FinCo, Inc. ("Parent"), will merge with and into Billtrust with Billtrust surviving as a wholly-owned subsidiary of EQT (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on September 28, 2022 (the "Merger Agreement"), each Billtrust stockholder will receive $9.50 in cash (the "Merger Consideration") for each Billtrust share owned.

3.      As discussed below, Defendants have asked Billtrust's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Billtrust's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Billtrust stock and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant Flint A. Lane has served as a member of the Board since January 2021 and is the Company's Chief Executive Officer and Chairman of the Board.

11.      Individual Defendant Bob Farrell has served as a member of the Board since January 2021.

12.      Individual Defendant Matt Harris has served as a member of the Board since January 2021.

13.      Individual Defendant Clare Hart has served as a member of the Board since January 2021.

14.      Individual Defendant Lawrence R. Irving has served as a member of the Board since January 2021.

15.     Individual Defendant John Murray has served as a member of the Board since April 2022.

16.     Individual Defendant Juli Spottiswood has served as a member of the Board since January 2021.

17.     Defendant Billtrust is a Delaware corporation and maintains its principal offices at 1009 Lenox Drive, Suite 101, Lawrenceville, New Jersey 08648.  The Company's stock trades on the NASDAQ Global Select under the symbol "BTRS."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Proposed Transaction**

20.     Billtrust provides cloud-based software and integrated payment processing solutions that automates business-to-business (B2B) commerce worldwide. The Company operates in two segments, Print, and Software and Payments. The company offers solutions that span credit decisioning and monitoring, online ordering, invoicing, cash application, and collections. Its products include credit Application, a B2B credit application module, which provides a digital process that delivers credit-related information in real-time to streamline prospect evaluation and new customer onboarding during initial sales activity; Credit Management, a credit management module, which provides ongoing risk assessment for its customers' customers; order/E-commerce module that offers B2B wholesale distributors with e-commerce capabilities; and invoicing module, which enables its customers to optimize invoice delivery across various distribution channels. The Company's products also comprise integrated

B2B payments, an integrated payment capabilities that enable customers to facilitate payments at every possible touchpoint across solution set; cash application module, which enables revenue reconciliation through line item reconciliation within accounting and ERP systems; collections module that enables customers to shift from a reactive recovery-centric model to a strategic customer touchpoint-centric operation, preventing payment delays, and driving positive customer experiences; and business payments network, which makes accepting electronic payments through connecting suppliers and their underlying systems, AP portals, payment card issuers, banks, and payment processors. It serves customers across various industry verticals comprising technology, healthcare, industrial, wholesale distribution, consumer packaged goods, and others. The Company was incorporated in 2001 and is headquartered in Lawrenceville, New Jersey.

21.     On September 28, 2022, the Company announced the Proposed Transaction:

> LAWRENCEVILLE, N.J.--(BUSINESS WIRE)--BTRS Holdings Inc. ("Billtrust" or "the Company") (NASDAQ: BTRS), a B2B accounts receivable automation and integrated payments leader, today announced that it has entered into a definitive agreement to be acquired by EQT X fund ("EQT Private Equity"), part of EQT, a leading global investment organization, in an all-cash transaction valuing Billtrust's equity at approximately $1.7 billion.

> Under the terms of the agreement, Billtrust shareholders will receive $9.50 per share in cash upon the closing of the transaction. The price per share represents more than a 64 percent premium above the closing share price of $5.77 on September 27, 2022, and more than a 76 percent premium above the trailing 90-day volume weighted average stock price for the period ended September 27, 2022.

> "This transaction marks the beginning of an exciting new chapter for Billtrust, our customers and employees while providing shareholders an immediate and substantial cash value with a compelling premium," said Flint Lane, Billtrust Founder and CEO. "We believe B2B payments and accounts receivable continue to be ripe for massive disruption and innovation, and our partnership with EQT will provide us with greater resources and flexibility to build on our leadership position."

Since its founding in 2001, Billtrust has maximized its customers' operational efficiency across the order-to-cash spectrum with a flexible and integrated cloud-based solution. Billtrust accelerates cash flow by automating complex and historically manual processes around credit decisioning and monitoring, online ordering, invoicing, payments and remittance capture, cash application and collections.

Arvindh Kumar, Partner and Co-Head of EQT's Global Technology Sector Team, said: "We look forward to partnering with Billtrust in its journey to help customers digitize and streamline their finance operations. The Billtrust platform features modern solutions, a compelling value proposition, and, like EQT, a commitment to innovation and transformation in the digital era. Additionally, the Company operates at the intersection of software, fintech, and payments—sectors in which EQT has deep familiarity and a track record of success. With proprietary end-to-end solutions that generate value for all stakeholders and across economic cycles, Billtrust is poised to advance its leading offering in the underpenetrated accounts receivable automation space."

**Transaction Details**

The transaction, which was approved by the Billtrust Board of Directors, is expected to close in the first quarter of 2023, subject to customary closing conditions, including approval by Billtrust shareholders and receipt of applicable regulatory approval.

Upon completion of the transaction, Billtrust's shares will no longer trade on the NASDAQ, and Billtrust will become a private company.

**Advisors**

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Billtrust, and Davis Polk & Wardwell LLP is acting as legal counsel to Billtrust.

Evercore is serving as financial advisor to EQT, and Weil, Gotshal & Manges LLP is acting as legal counsel to EQT.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Billtrust's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On October 21, 2022, Billtrust filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by Billtrust management and relied upon by J.P. Morgan in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in May and July 2022 (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Billtrust management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted Gross Profit, EBIT, and, Unlevered After-Tax Free Cash Flows but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

30.     With respect to J.P. Morgan's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

31.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for Billtrust; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 4.0% to 6.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 13.0% to 14.0%; (iv) the Company's weighted average cost of capital; and (v) certain tax credits expected by Billtrust management to be utilized by the Company from June 30, 2022 through December 31, 2029.

32.     With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose the analysts observed and the corresponding price targets.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

10

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Billtrust within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Billtrust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Billtrust, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Billtrust, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 27, 2022                    By:  **MELWANI & CHAN LLP**

/s/ Gloria Kui Melwani
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*